**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A U.S. POSTAL SERVICE PARCEL: TRACKING NUMBER 9405 5362 0830 3300 1001 65 CURRENTLY LOCATED AT DULLES PROCESSING AND DISTRIBUTION CENTER AT 44715 PRENTICE DRIVE, DULLES, VIRGINIA 20101 IN THE EASTERN DISTRICT OF VIRGINIA | Case No. 1:26-SW-78 |

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR A SEARCH WARRANT FOR ONE U.S. MAIL PARCEL**

I, William Rutz, being duly sworn, hereby depose and state:

**I.    INTRODUCTION**

**A.    Purpose of Affidavit**

1. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for one parcel (the "**SUBJECT PARCEL**") sent via the U.S. Postal Service ("USPS") and further described in Attachment A, which is incorporated by reference. The **SUBJECT PARCEL** is currently located at the United States Postal Inspection Service ("USPIS") office at the USPS Processing and Distribution Center ("P&DC"), 44715 Prentice Drive, Dulles, Virginia 20101, which is located within the Eastern District of Virginia.

2. I submit that the facts alleged herein provide probable cause to believe that a search of the **SUBJECT PARCEL** will yield evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (possession with intent to distribute and

1

distribution of controlled substances). Your Affiant therefore requests authority to search the **SUBJECT PARCEL** described in Attachment A for the items described in Attachment B.

3. The **SUBJECT PARCEL** is identified as follows:[1]

| Subject Parcel | Express (E), Priority (P), First Class (F), or Registered (R) Tracking ID Number | From: Name and Address | To: Name and Address | Current Parcel Location |
|---|---|---|---|---|
| 1 | (P) 9405 5362 0830 3300 1001 65 | JAMIE SMITH 1236 E CHELSEA DR BOUNTIFUL UT 84010 | NICOTRA FOODS LLC 4801 W BRADDOCK RD ALEXANDRIA VA 22311-4801 | USPS P&DC in Dulles, VA, located in the Eastern District of Virginia |

B. **Affiant Training and Experience**

4. I am a Task Force Officer with the USPIS and a Detective with the Alexandria, Virginia Police Department. I have been employed with the Alexandria, Virginia Police Department since December 2008 and served in the Patrol Division from then until May 2012. I was then assigned to the Community Oriented Policing Section from May 2012 to August 2018, with the primary function of investigating street level narcotics, weapons, and nuisance offenses. Since August 2018, I have been assigned to the Vice/Narcotics Section, with the primary function of investigating mid-to-upper-level narcotics trafficking. From October 2021 to April 2025, I was a part-time Task Force Officer with the Federal Bureau of Investigation's Hi-Tech Opioid Task Force, with the primary function of investigating narcotics marketed and sold on virtual hidden services. Since April 2025, I have been assigned as a Task Force Officer with the USPIS, with the

---

[1] For all of the tables in this Affidavit regarding the **SUBJECT PARCEL**, I have listed the sender and recipient information as it appears on the **SUBJECT PARCEL**. In other words, the capitalization, punctuation, and spelling of addresses in the table are the same as that which I observed on the **SUBJECT PARCEL**.

2

primary function of investigating narcotics trafficking in the mail stream. I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors. I have infiltrated drug distributors in an undercover capacity and have conducted "controlled buy" operations involving the use of confidential informants. I have received training in criminal law, investigations, drug identification and distribution methods, undercover operations, and drug interdiction from the Northern Virginia Criminal Justice Training Academy, the Northeast Counterdrug Training Center, and the International Association of Undercover Officers.

5. Through my work in law enforcement, I have participated in multiple interdictions, controlled deliveries, seizures, and search warrant executions that have resulted in criminal arrests and prosecutions. In particular, I have become familiar with the manner and means by which narcotics traffickers use U.S. mail and commercial carriers to distribute controlled substances, and the proceeds derived from their sale.

    **C.**    **Sources of Information**

6. The facts and information contained in this Affidavit are based on my training, experience, personal knowledge, and observations during this investigation, as well as information provided by other agents involved in this investigation, which I believe to be reliable. All observations that were not made personally by me were communicated to me by the persons who made the observations. Sources of information used routinely in this process include zip code verification through a public database maintained by the USPS and association checks between names and addresses in a law enforcement database. The data contained in the law enforcement database assists investigators with identifying information such as: an individual's address(es), phone number(s), email address(es), criminal history, and vehicle registration(s). This Affidavit

contains only that information necessary to establish probable cause in support of an application for the requested search warrant. This Affidavit is not intended to include each and every fact and matter observed by or made known to agents of the government.

## II. PROBABLE CAUSE

### A. Background on Factors Indicating Contraband in a Package

7. Based upon my training and experience, I know that there are suspicious characteristics common to many packages that contain narcotics, controlled substances, narcotics proceeds (currency), and personal and financial documents related to such proceeds and narcotics. These factors, detailed more fully below, are used as a pointer system to identify packages requiring further investigation.

8. As described further below, the **SUBJECT PARCEL** exhibited several of these factors. While there are many characteristics that experienced Postal Inspectors look for, the most common factors or suspicious characteristics routinely observed in the course of screening packages are discussed below.

### Suspicious Characteristics

9. **Shipping Method:** As alternatives to First-Class Mail, which does not always provide a customer with the ability to track the progress of a parcel through the system, the USPS offers Priority Mail Express and Priority Mail. Drug distributors frequently mail narcotics via Priority Mail Express and Priority Mail to maintain awareness of the package's location.

    a. Priority Mail Express: Priority Mail Express is guaranteed to be delivered on a set date and time, usually overnight (the deadline is determined at the time of mailing). The customer receives a receipt with this guaranteed information and can opt for a signature requirement when the parcel is delivered. Customers can track the parcel online by its

distinct Priority Mail Express tracking number. The weight of the package and the distance traveled are the two main factors in setting the price. Priority Mail Express costs more than Priority Mail. Businesses using Priority Mail Express typically have a business or corporate account visible on the mailing label, which covers the cost of the mailing, in contrast to the drug distributor who will pay at the counter with cash or a credit card.

   b. <u>Priority Mail</u>: Priority Mail has a delivery service standard of two to four business days, but it is not guaranteed. Priority Mail is a less expensive alternative to Priority Mail Express but still provides the ability to track a parcel. Business Priority Mail Express parcels typically weigh no more than eight ounces, and business Priority Mail parcels typically weigh no more than two pounds. Drug packages often exceed these weights; in my experience, it is fairly easy to separate out smaller parcels, which constitute seventy to eighty percent of all Priority Mail Express and Priority Mail parcels, from other parcels. Address labels on business parcels are often typed, and address labels on drug packages are commonly handwritten. Often, drug traffickers using Priority Mail Express will opt out of the signature requirement.

   c. <u>First-Class Mail</u>: Some individuals mailing illicit narcotics through the USPS are now utilizing both First-Class package service with tracking and First-Class mail without tracking to obscure their illicit activity and to circumvent law enforcement profiling efforts. First-Class packages containing illicit narcotics may weigh less than one pound, or even be mailed in flat envelopes, depending on the type of narcotic involved.

  10. **Invalid Sender/Return Address:** To distance themselves from parcels containing drugs, drug traffickers often use fictitious or false return addresses and sender names. I have seen numerous packages with invalid sender names, including packages with names of celebrities,

cartoon characters, or fictional persona, but more often a search of law enforcement databases reflects that there is no association between the name of the sender and the address provided. A fictitious or false address can be anything from an incorrect zip code to a non-existent house number or street.

11. **Invalid Recipient/Address:** It may appear counter-productive to put the wrong receiving address on a package, but often the named recipient is not associated with the address. This provides plausible deniability to anyone receiving the package as to their knowledge of its contents. Sometimes drug packages are addressed to vacant properties with the expectation that the postal carrier will just leave it at the address. The intended recipient will then retrieve it from that location and hope to remain anonymous.

12. **Destination State:** If other criteria are present, I know from experience and training that a domestic package addressed to a "source" narcotics state, which is a state where narcotics often originate, can further indicate that a parcel contains proceeds from the sale of illegal narcotics and/or illegal narcotics. Common source states include California, Texas, Arizona, and Florida.

13. **State of Origin:** Moreover, if other criteria are present, I know from experience and training that a domestic package sent from a "source" narcotics state can further indicate that a parcel contains controlled substances.

14. **Electronic Postage:** The USPS created electronic postage as a service for frequent mailers and businesses who prefer printing address labels and purchasing postage from their residence or business. In my training and experience, drug traffickers may sometimes create electronic postage accounts as a means of giving legitimate appearance to their drug mailings. In these cases, they typically create the accounts using fictitious account information and often provide pre-paid credit cards, which are difficult to track, as a means of payment. Drug traffickers

often use legitimate business return addresses in states other than California, Texas, Arizona, and other known "source" states as a means to deter detection, as these other states are not usually considered "source" states for controlled substances. The postage labels are printed/typed, unlike the typical drug-related mailing label, which is routinely handwritten.

15. It is my experience that, when a combination of the factors outlined above are observed, a drug detection canine will likely "alert" next to the parcel, indicating that they have detected narcotics. Therefore, these factors become a reliable way to profile parcels for additional scrutiny and inspection.

**B. Identification of the SUBJECT PARCEL**

16. On January 2, 2026, I intercepted the **SUBJECT PARCEL** in the Eastern District of Virginia at the Merrifield Post Office, located at 8409 Lee Highway, Merrifield, Virginia, 22116. The **SUBJECT PARCEL** was placed into holding at the USPIS Dulles Domicile at the USPS P&DC.

17. As listed in the table below, the **SUBJECT PARCEL** has the following characteristics:

| SUBJECT PARCEL | |
|---|---|
| Priority Express/Priority/Registered/1st Class | (Priority) 9405 5362 0830 3300 1001 65 |
| Weight of Parcel | Approximately 10 Oz |
| Sender Name/Address Associated | Not Associated |
| Recipient Name/Address Associated | Associated |
| Signature Requirement | No |
| Source Area | No |
| Other Suspicious Characteristics | N/A |

18. On or about December 30, 2025, I was reviewing USPS business records for parcels destined for Northern Virginia. During that time, I observed a record of the **SUBJECT PARCEL**, which was first mailed on or about December 30, 2025, in the Bountiful, Utah area, and destined for a personal residence in Alexandria, Virginia.

19. I reviewed law enforcement database records to conduct a check of the sender name and address listed on the **SUBJECT PARCEL**, to wit, "JAMIE SMITH, 1236 E CHELSEA DR, BOUNTIFUL UT 84010." I determined the address to be a valid residence but found no association of the name "JAMIE SMITH" to the address. Based upon my training and experience, I know that drug traffickers that utilize the U.S. mailstream to ship narcotics often use fraudulent names/addresses to protect their identity from law enforcement.

20. I reviewed law enforcement database records to conduct a check of the recipient name and address listed on the **SUBJECT PARCEL**, to wit, "NICOTRA FOODS LLC, 4801 W BRADDOCK RD, ALEXANDRIA VA 22331-4801." I determined the address to be a valid apartment building and did find an association of an individual named "ADRIAN NICOTRA" to apartment #202.

21. Based on the suspicious characteristics described above, this parcel was presented to a trained police canine for examination on January 9, 2026. Canine Buck and his handler, Prince William County, Virginia Police Detective Stephen Cieslinski, were utilized to determine whether the **SUBJECT PARCEL** contained illegal narcotics. Standard protocols for canine detection were followed using Canine Buck. Canine Buck was last certified in September 2025 to alert on the odors of marijuana, cocaine (and its derivatives), heroin, MDMA (ecstasy), methamphetamine, and fentanyl. Canine Buck is trained regularly to ensure the canine's accuracy in the detection of drug odors.

22.  The **SUBJECT PARCEL** was placed among other parcels at the USPS P&DC. At that time, Detective Cieslinski and Canine Buck were brought in to search the area. The handler observed Canine Buck and then advised that the canine did alert on the **SUBJECT PARCEL**, which was hidden arbitrarily among other parcels.

### III.   CONCLUSION

23.  I submit that, based on the canine's positive alert, as well as my training, my experience, and the characteristics outlined above, there is probable cause to believe that the **SUBJECT PARCEL** contains narcotics, controlled substances, and/or materials relating to the distribution of controlled substances through the United States Mail. Therefore, I respectfully request that this Court authorize a search warrant for the **SUBJECT PARCEL**, as described in Attachment A, authorizing the seizure of the items described in Attachment B.

Respectfully submitted,

*William Rutz*
William Rutz
Task Force Officer
U.S. Postal Inspection Service

Attested to in accordance with the
requirements of FED. R. CRIM. P. 4.1
via telephone on January 21, 2026.

_____
The Honorable Lindsey R. Vaala
United States Magistrate Judge
Alexandria, Virginia

## ATTACHMENT A

## ITEM TO BE SEARCHED

The **SUBJECT PARCEL** is described as follows:

| Subject Parcel | Express (E), Priority (P), First Class (F), or Registered (R) Tracking ID Number | From: Name and Address | To: Name and Address | Current Parcel Location |
|---|---|---|---|---|
| 1 | (P) 9405 5362 0830 3300 1001 65 | JAMIE SMITH 1236 E CHELSEA DR BOUNTIFUL UT 84010 | NICOTRA FOODS LLC 4801 W BRADDOCK RD ALEXANDRIA VA 22311-4801 | USPS P&DC in Dulles, VA, located in the Eastern District of Virginia |



10

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

1. All contents of the **SUBJECT PARCEL** described in Attachment A that relate to violations of 21 U.S.C. § 841 (the "Target Offense"), including:

   a. Narcotics or other controlled substances, as well as contraband related to drug trafficking, *e.g.*, packaging materials;

   b. Any United States currency or other financial instruments that appear to be proceeds related to the distribution or purchase of illegal narcotics;

   c. Any customer or distributor records related to drug trafficking;

   d. Any items used to track the contents of the package;

   e. Business ledgers, lists, and notations relating to drug trafficking;

   f. Records of a financial nature that suggest how payment for illegal narcotics is conducted; and

   g. Other evidence of transactions in relation to drug trafficking.